DANIEL GORMAN,

         Plaintiff,

  - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

         Defendant.

MEMORANDUM AND ORDER
13-CV-3227 (JG)

APPEARANCES:

  SEELIG LAW OFFICES, LLC
    299 Broadway, Suite 1600
    New York, NY 10165
  By: Phillip Howard Seelig
    *Attorneys for Plaintiff*

  LORETTA E. LYNCH
    United States Attorney
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
  By: Candace Scott Appleton
    *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

  Daniel Gorman seeks review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration's denial of his application for Social Security Disability ("SSD") benefits. The parties have cross-moved for judgment on the pleadings. Gorman asserts that the Administrative Law Judge ("ALJ") committed various errors in finding him not disabled and seeks a judgment that he is disabled and a remand to the Acting Commissioner of Social Security (the "Commissioner") solely for the calculation of benefits, or in the alternative, a remand for further proceedings. The Commissioner requests that I affirm her decision. I heard oral

argument on February 7, 2014. For the reasons that follow, Gorman's motion is granted in part and the Commissioner's motion is denied. The case is remanded to the Commissioner for further proceedings consistent with this order.

BACKGROUND

A. *Facts and Procedural History*

Gorman was born on June 5, 1966. R. 172. He received a G.E.D. diploma in 1985, R. 176, and he currently lives in Staten Island with a friend, Nancy Scarlett, and Scarlett's mother and young daughter. R. 64, 183. Immediately before his alleged disability onset date of July 23, 2009, R. 154-55, Gorman worked as a part-time administrative assistant at the University of Nevada for almost two months. R. 176. From August 2007 to February 2009 he worked as a stone derrickman and rigger, and from April 1999 through June 2004 he was an administrative assistant and PC technician at the Pratt Institute. *Id.* He worked as a paint salesperson at Home Depot from 1995 to 1998. R. 195-97, 221. Gorman's date last insured is March 31, 2011, R. 45, and he began working again on May 16, 2013. Pl. Br. at 2 n.2.

Gorman filed an application for SSD benefits on January 10, 2011. In a function report dated February 11, 2011, he listed the following conditions as limiting his ability to work: depression, arthritis, back injury, asthma, neuropathy, heart arrhythmia, and bipolar depression. R. 175. He stated that he stopped working on July 23, 2009, due to these impairments. *Id.* Gorman's application was denied, R. 108, and he requested a hearing before an ALJ, which was held on March 12, 2012, before ALJ Jack Russak. R. 57. On March 21, 2012, the ALJ concluded that Gorman had not been disabled before his date last insured. R. 40. The Appeals Council denied Gorman's request for review. R. 1. Gorman brought this action on June 5, 2013, asserting that he was disabled during the insured period because he suffered from the following

2

impairments: major depressive disorder; generalized anxiety disorder; asthma; chronic obstructive pulmonary disease; gastroesophageal reflux disease; sleep disorder and obstructive sleep apnea; back pain; bilateral tibial motor neuropathy of the lower extremities; lower lumbar degenerative disc/facet change; left L4-5 and right L5-S1 foraminal disc extension and right L5 spondylolysis; left hepatic hemoangioma; and glenohumeral chondromalacia.  Compl., ECF No. 1 ¶ 6.

B.  *Regulatory Standards*

In order to receive disability benefits under the Social Security Act, a claimant must have been disabled during an insured period.  42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  To be found disabled, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant may be found disabled only if his impairment or impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Social Security Administration's regulations prescribe a sequential five-step analysis for determining whether a claimant is disabled:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him

3

> disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation and alterations omitted) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth this process). The claimant bears the burden of proof in the first four steps, the Commissioner in the last. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

C. *The ALJ's Decision*

In his decision dated March 21, 2012, the ALJ determined at the first step of the analysis described above that Gorman had not engaged in substantial gainful activity from his alleged onset date, July 23, 2009, through March 31, 2011, the date last insured. R. 45. At step two, the ALJ found that in this time period Gorman had the following severe impairments: depression, anxiety, asthma, arthritis, lumbar disc disease, and heart arrhythmia. *Id.* With regards to Gorman's mental impairments, the ALJ concluded that Gorman had a mild restriction in the activities of daily living and moderate difficulties in social functioning as well as concentration, persistence or pace. R. 46. The ALJ determined at step three that none of these impairments, either singly or in combination, met or medically equaled the severity of one of the listed impairments in Appendix 1 of the regulations. R. 45-47.

Next, the ALJ found that Gorman had the residual functional capacity ("RFC") to perform light work, but with the following limitations: only occasionally climbing ladders, ropes,

and scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; frequently climbing ramps and stairs; and completely avoiding working from unprotected heights. R. 47. The ALJ determined that Gorman required a "sit-stand option" that would allow him to alternate between either position at one-hour intervals and that he must frequently avoid exposure to extreme heat or cold, wetness, humidity, fumes, odors, dusts, gases, chemicals, and other respiratory irritants. *Id.* Due to Gorman's mental impairments, the ALJ concluded that Gorman was limited to performing simple, routine, and repetitive tasks in a low-stress environment. *Id.* The ALJ defined a low-stress environment as one in which there is only occasional interaction with the general public and co-workers, and only occasional changes in the work setting. *Id.*

Based on this RFC and the testimony of a vocational expert, the ALJ determined at step four that Gorman was unable to perform any of his past relevant work. R. 50. At the fifth step, however, the ALJ found that Gorman's RFC did allow him to perform other work that exists in significant numbers in the national and regional economies, such as an electrical assembler, table worker, or an assembler of small products. R. 50-51. Accordingly, the ALJ concluded that Gorman had not been disabled from the alleged onset date through the date last insured. *Id.*

## DISCUSSION

Gorman contends that the ALJ committed several errors. He claims, *inter alia*, that the ALJ improperly weighed the medical evidence, failed to sufficiently develop the record, and erred in assessing the credibility of Gorman's testimony.

A. *Standard of Review*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by

substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The first inquiry requires the court to determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). The second inquiry requires the court to decide if the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also id.* ("Substantial evidence is more than a mere scintilla.") (internal quotation omitted).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). A remand for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, [] to have correctly applied the . . . regulations," *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004), or "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Alternatively, where the record establishes "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose," the court should remand solely for the calculation and payment of benefits. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980).

B. *The Treating Physician Rule*

Gorman asserts that the ALJ erred in according the opinions of his treating physicians, Dr. Deepak Vadhan and Dr. Albert Scublinsky, "little weight." R. 49-50.

1. *Regulatory Standards*

Pursuant to the treating physician rule set out in 20 C.F.R. § 404.1527(c), a treating physician's opinion about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). The Commissioner must set forth "good reasons" for refusing to accord the opinions of a treating physician controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (same). She must also give "good reasons" for the weight actually given to those opinions if they are not considered controlling. *Halloran*, 362 F.3d at 33; *see also Snell*, 177 F.3d at 133 ("Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician."). When the Commissioner does not give a treating physician's opinion controlling weight, the weight given to that opinion must be determined by reference to: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal v. Apfel,* 134 F.3d 496, 503 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c).

2. *Dr. Vadhan*

Dr. Vadhan began treating Gorman in February 2012, Pl. Br. 8, and completed a medical source statement on March 8, 2012, based on a longitudinal review of Gorman's medical records. R. 509. He opined that due to his asthma, in an eight-hour workday Gorman could stand or walk for less than two hours, and sit for less than two hours. R. 510. Vadhan stated that

7

Gorman would require bed rest during the workday, and that Gorman's respiratory symptoms would likely interfere with his attention and concentration causing him to be off-task for more than 90% of a typical workday. R. 512. He estimated that Gorman suffers from one or two asthma attacks per week and that each attack incapacitates Gorman for one or two days. *Id.* Vadhan stated that Gorman must avoid all exposure to extreme heat and cold, high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. R. 508-09. Although Vadhan completed the report in March 2012, almost a year after Gorman's date last insured, it purports to cover the period from Gorman's alleged onset date to the date the form was completed. R. 510.

The ALJ found Dr. Vadhan's assessment "highly incommensurate with the objective medical evidence" and noted that Vadhan did not explain why he believed that Gorman's respiratory problems would so severely restrict his ability to sit, stand, and walk, or cause him to be off-task 90% or more of the workday. R. 49. For these reasons, the ALJ gave little weight to Vadhan's opinion. *Id.*

Upon review of the record, I find no error in the ALJ's decision to accord little weight to Dr. Vadhan's opinion. Vadhan began treating Gorman almost a year after his date last insured and had been treating Gorman for less than a month when he completed the medical source statement. R. 513. Furthermore, Gorman did not discuss any symptoms related to his asthma when asked by the ALJ at the hearing about his impairments, R. 75, and the record contains only one instance of hospital treatment for Gorman's asthma, in December 2009, when he was admitted to the emergency room for suicidal ideation and depression. R. 309. On that occasion, Gorman was wheezing at the intake physical examination, but his asthma was soon stabilized with medication and he was then treated for his depression and other psychological

8

problems. Tr. 308-09. Although Dr. Kanwardeep Aiden described Gorman's asthma as "uncontrolled" in a progress note dated November 12, 2010, Gorman stated in a function report that his asthma attacks can be controlled by inhaler or nebulizer. R. 192. Furthermore, Dr. Chitoor Govindaraj, who conducted a consultive examination of Gorman on March 6, 2011, did not detect any wheezing or rales, and diagnosed Gorman with a history of bronchial asthma, well-controlled. R. 409-10. The ALJ could have provided a more detailed explanation of why he determined that Vadhan's opinion is due little weight, but in light of the short length of time that Vadhan had been treating Gorman and the substantial evidence in the record that is inconsistent with Vadhan's opinion, I conclude that the ALJ's determination is adequate under the regulations and supported by substantial evidence.

    3. *Dr. Scublinsky*

Dr. Scublinsky, a psychiatrist, first saw Gorman on December 9, 2010, R. 543, and continued to treat him monthly thereafter. R. 71. On March 3, 2011, he completed a mental assessment questionnaire, in which he diagnosed Gorman with major depressive disorder. R. 400. He stated that Gorman had been depressed since childhood and had been hospitalized once for depression. R. 402. Scublinsky reported that Gorman was clean, neat, friendly, and cooperative, and that his attention, concentration, orientation, memory, and information were all normal, but that his insight and judgment were poor. R. 403. Scublinsky opined that Gorman is capable of performing all activities of daily living, but in a work setting is unable to relate to supervisors or perform repetitive tasks due to his anxiety. R. 404. Scublinsky stated that due to anxiety, Gorman is limited in his understanding, memory, sustained concentration, persistence, social interaction, and adaption. R. 405. Scublinsky also completed a medical assessment of Gorman's mental ability to do work-related activities, dated February 23, 2012. R. 503-06. In

9

this assessment, Scublinsky stated that Gorman is unable to meet competitive standards in the following areas: following work rules; relating to co-workers; dealing with the public; interacting with supervisors; dealing with work stresses; maintaining attention and concentration; performing repetitive tasks; behaving in an emotionally stable manner; relating predictably in social situations; demonstrating reliability; and completing job instructions. R. 503-04. Scublinsky listed sadness, anxiety, anhedonia, poor sleep, poor concentration, and psycho-motor retardation as the medical signs and findings supporting his assessment. R. 504. He concluded that Gorman is unable to work any job. R. 506.

The ALJ accorded Dr. Scublinsky's opinion little weight, finding that it is "largely conclusory, appears to place excessive reliance on the claimant's subjective allegations, and is not supported by a narrative discussion explaining why [Gorman] is unable to meet competitive standards." R. 50 (internal quotation marks omitted). In evaluating the seriousness and effect of Gorman's mental impairments, the ALJ instead relied on the opinions of the two psychiatric consulting physicians, Dr. Hahn and Dr. Hou, according their opinions substantial weight. R. 50.[1]

I conclude that the ALJ erred in determining that Dr. Scublinsky's opinion should be afforded little weight. When an ALJ finds that a treating physician's opinion is not controlling, he must provide "good reasons" for the weight he gives the opinion. *See Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2)). As described above, in determining the

---

[1] Dr. Hahn examined Gorman on March 8, 2011, and diagnosed major depressive disorder, recurrent, in partial remission. R. 416. He opined that Gorman was able to do work-related activities. *Id.* Dr. Hou never examined Gorman, but on April 7, 2011, completed a psychiatric review based on Gorman's medical record. R. 417. Hou also diagnosed Gorman with major depressive disorder and determined that Gorman was moderately limited in: activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; sustaining concentration and persistence; responding appropriately to changes to the work setting; and his ability to travel in unfamiliar places or use public transportation. R. 427-32. He found that Gorman was not significantly limited in his abilities to: ask simple questions or request assistance; accept instructions and respond appropriately; get along with coworkers; maintain socially appropriate behavior; be aware of normal hazards and take appropriate precautions; and set realistic goals. R. 432.

proper weight to give a treating physician's medical opinion an ALJ must consider "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal*, 134 F.3d at 503; *see also* 20 C.F.R. § 404.1527(c). In evaluating Scublinsky's opinion, the ALJ does not appear to have considered all of these factors. *See Schaal*, 134 F.3d at 504 (finding the ALJ's decision to be "tainted by legal error" where "the ALJ failed to consider all of the factors cited in the regulations"); *Bunn v. Colvin*, No. 11-CV-6150, 2013 WL 4039372, at *7 (E.D.N.Y. Aug. 7, 2013) (finding legal error and remanding for further proceedings where the ALJ failed to provide "'good reasons' for the lack of weight he gave to [the treating physician's] opinion, or otherwise assess the factors set forth in the regulations"); *Rivas v. Barnhart,* No. 01-CV-3672, 2005 WL 183139, at *22 (S.D.N.Y. Jan.27, 2005) ("Where an ALJ fails to consider all of the relevant factors in deciding what weight to assign the opinion of a treating physician, the ALJ's decision is flawed.").

    Specifically, the ALJ does not appear to have considered that Dr. Scublinsky treated Gorman monthly for much of the alleged period of disability. This factor is especially relevant in evaluating a claimant's psychiatric impairments. *See Rodriguez v. Astrue*, No. 07-CV-534, 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009) ("The mandate of the treating-physician rule to give greater weight to the opinions of doctors who have a relationship with a plaintiff is particularly important in the mental-health context."). Relatedly, in light of the fact that Dr. Hou never personally examined Gorman and Dr. Hahn only examined him once, the ALJ's decision to give greater weight to the medical opinions of these consulting physicians than to Scublinsky's opinion requires an explanation. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir.

11

2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[I]n evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight."); *Pogozelski v. Barnhart*, No. 03-CV-2914, 2004 WL 1146059, at *13 (E.D.N.Y. May 19, 2004) (concluding that ALJ erred in according "more than limited weight" to opinion of physician who had examined the claimant on only one occasion); *Crespo v. Apfel,* No. 97-CV-4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar.17, 1999); *see also Rodriguez*, 2009 WL 637154, at *26 ("It has often been noted that it is particularly difficult to accurately diagnose depression from administrative records alone."). In addition, although Scublinsky did not provide a narrative account explaining his medical opinions, the ALJ has a duty to develop the record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("[T]he ALJ generally has an affirmative obligation to develop the administrative record."). If the ALJ believed that Scublinsky's medical opinions needed more explanation, he should have asked Scublinsky to provide a more thorough account of his reasoning instead of simply disregarding Scublinsky's opinions altogether. *See Rosa*, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*.").

Thus, on remand, the assigned ALJ shall either accord Dr. Scublinsky's opinion controlling weight or explain and offer good reasons for whatever lesser weight it is given.

C. *The ALJ's Adverse Credibility Finding*

Gorman asserts that the ALJ also failed to properly evaluate his subjective accounts of the intensity, persistence, and limiting effects of his symptoms.

12

1. *Regulatory Standards*

To decide whether a claimant is disabled, the Commissioner must consider the subjective evidence of pain and disability testified to by the claimant. *See* 20 C.F.R. § 416.929(a). "It is within the discretion of the Secretary to evaluate the credibility of the [claimant's] complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology." *Gernavage v. Shalala,* 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995). The claimant's statements about pain cannot alone establish disability; "there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged," *Davis v. Massanari,* No. 00-CV-4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001), although there need not be "direct medical evidence confirming the extent of the pain." *Snell,* 177 F.3d at 135.

To appropriately assess a claimant's assertions of pain and disability, the regulations provide a two-step process. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). At the second step, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)) (alteration added).

Seven factors are used in evaluating a claimant's subjective complaints: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side

effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (*e.g.,* lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii); *see also Ligon v. Astrue,* No. 11-CV-0162, 2012 WL 6005771, at *17 (E.D.N.Y. Dec. 3, 2012). If the ALJ decides a claimant's testimony is not credible, the ALJ must set forth the reasons "with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988); *see also Ligon*, 2012 WL 6005771, at *17 (same); S.S.R. 96-7P, 1996 WL 374186, at *4 (July 2, 1996) ("[T]he adjudicator must . . . give specific reasons for the weight given to the individual's statements.").

  2. *Gorman's Testimony*

Gorman testified that he suffers from anxiety, severe depression, back pain, arthritis in his hands and feet, asthma, sleep apnea and occasional headaches. R. 48. He stated that he has frequent panic attacks, during which he feels extreme fear, confusion, a need to hide, and a rapid heartbeat. R. 193. Occasionally he has passed out from a panic attack. R. 74. Some days his depression prevents him from getting out of bed, and occasionally he is unable to leave his house for several days due to his depression and anxiety. R. 75, 186. Gorman testified that he thinks about suicide, and has a history of suicidal thoughts, but that he does not intend to take his own life. R. 77. Gorman will occasionally "blow up" and "throw a tantrum like a five year old," R. 76, and he claims to have a poor short-term memory. R. 48. He stated that stress or changes in his schedule affect him very badly, both mentally and physically. R. 190. Gorman

14

described the pain in his back as shooting and stabbing down both legs, but mainly his left leg. R. 74. He testified that he has pain when he bends over, R. 85, that he can sit or stand for a maximum of two hours, depending on the level of pain, and that he can carry up to 10 pounds without pain. R. 78. He claims that after 30 minutes of walking it becomes very painful. R. 89.

Gorman stated that during the period of alleged disability, his daily activities consisted of reading, watching television, using the computer, doing cross-word puzzles, taking walks on "good" days, and helping with household chores such as vacuuming (with a dust mask) and taking out the garbage. R. 79, 88, 183. He testified that he spent most of the day lying flat on his back, watching television. R. 81. He did not go shopping, but he could prepare food for himself, although was only able to make simple things like sandwiches, microwavable meals, and cereal. R. 78, 185. He was able to take care of his own personal hygiene, but utilized a list to help remember what to do. R. 185.

3. *The ALJ's Improper Credibility Determination*

The ALJ first found that Gorman's medically determinable impairments could reasonably be expected to cause the symptoms alleged. R. 48. At the second step of the credibility determination, however, the ALJ concluded that Gorman's statements regarding the intensity, persistence and limiting effects of his symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 48. This conclusory statement is insufficient for two reasons.

First of all, this finding does not comport with the language of the regulations, which makes clear that a claimant's statements about their symptoms are to be considered by the ALJ in the process of determining a claimant's RFC – not *after* their RFC has already been established. *See* 20 C.F.R. § 404.1545(3) ("We will assess your residual functional capacity

based on . . . descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you . . . ."); *see also Bunn*, 2013 WL 4039372, at *11 (holding that 20 C.F.R. § 404.1545(3) requires "that the claimant's statements regarding his symptoms – and any credibility determination stemming from those statements – form part of, and therefore must precede, the RFC assessment"); *Fortier v. Astrue,* No. 09-CV-993, 2010 WL 1506549, at *19 n.18 (S.D.N.Y. Apr. 13, 2010) ("This conclusion is somewhat problematic, because plaintiff's statements are one of the factors the ALJ is to consider in *making* the RFC assessment.") (emphasis in original).

Second, as described above, if an ALJ decides to reject a claimant's subjective testimony regarding their pain or other symptoms, "he must do so . . . with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). Here, the ALJ failed to offer any explanation for his decision to discredit Gorman's testimony. *See* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the [ALJ] to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). Although "remand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's [credibility] decision,'" *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (unpublished) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)), I am unable to determine from the record whether this credibility determination is supported by substantial evidence.

## CONCLUSION

For the reasons explained above, Gorman's motion for judgment on the pleadings is granted in part. The Commissioner's motion is denied. The case is remanded to the

Commissioner for reconsideration, which must include a proper application of the "treating-physician rule" in considering Dr. Scublinsky's opinion and a proper evaluation of Gorman's subjective complaints. The Clerk of the Court is directed to enter judgment consistent with this order and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 10, 2014
Brooklyn, New York